Argued 19 February; decided 22 April, 1901.

## SMITH *v.* WILKINS.

[64 Pac. 760.]

LIENS AND MORTGAGES — PRIORITY AS TO LAND — AS TO BUILDING.

1.  It is settled law in Oregon that under section 3671, Hill's Ann. laws,* a lien for material or labor used in the construction of a building upon land mortgaged before the commencement of such building will, as to the building, take precedence over the mortgage: *Cooper Mfg. Co.* v. *Delahunt*, 36 Or. 402, followed.

MECHANICS' LIENS — PRIORITY BETWEEN MORTGAGES AND LIENS.

2.  An examination of the testimony convinces the court that the mortgages on the lots referred to were made before the construction of the building thereon was commenced; so there is no question about the priority of the mortgages over the subsequent mechanics' liens as against the land.

APPEAL — EFFECT OF REVERSAL BY ONE PARTY APPEALING.

3.  Where the decree in a suit for the foreclosure of several mechanics' liens on a lot with the buildings thereon adjusted the rights of all the parties except one, whose claim was disallowed, and he appealed, and none of the other claimants appeared in the appellate court, though served with notice, and the cause was remanded with permission to appellant to amend his answer so as to secure a trial on the merits of his claim; such reversal did not affect the status of the lien claimants other than appellant, and as to their rights the original decree is still in force, whatever may have been the decree rendered after the reversal and upon consideration of appellant's claim.

From Benton: JAS. W. HAMILTON, Judge.

Suit by J. R. Smith and others against M. W. Wilkins and others to foreclose sundry mechanics' liens.

---

*NOTE.—Section 3671 of Hill's Ann. Laws, so far as applicable here, reads as follows:  *  *  *  "And all liens created by this act upon any building or other improvement shall be preferred to all prior liens, mortgages or other encumbrances upon the land upon which said building or other improvement shall have been constructed or situated when altered or repaired; and in enforcing such lien such building or other improvement may be sold separately from said land; and when so sold the purchaser may remove the same  *  *  *."—REPORTER.

This is the second appeal.  See *Smith* v. *Wilkins,* 31 Or.
121 (51 Pac. 438).  The decree from which the prior ap-
peal was prosecuted directed a foreclosure of the mortgages
of the defendants Gerhard and Phile, and of the mechanics'
liens of the plaintiffs, and the defendants Foss, Hess, and
Woodworth; that the mortgaged property, including the
hotel building erected thereon, be sold; that the proceeds aris-
ing from the sale of the north half lot 8, block 5, be applied,
after the satisfaction of certain costs and expenses, to the
payment of the Phile mortgage, and of lot 7, block 5, to the
payment of the Gerhard mortgage; and that any balance re-
maining be applied to the payment of the mechanics' liens
of the plaintiffs and said defendants in proportion to the
amount of their several demands.  The defendant Beach,
having been defeated in the establishment of his claim and
lien, appealed to this court, and obtained a reversal of the
decree.  The cause was thereupon remanded, and Beach, by
leave of the court, filed an amended answer.  A trial was
then had as between him and the mortgagees, which resulted
in a decree directing the sale of the lot separate from the
building; that the proceeds arising therefrom be applied,
first, to the payment of the Gerhard and Phile mortgages,
and the surplus, together with the proceeds of the building,
be applied to the satisfaction of the mechanics' liens of the
plaintiffs and the defendants, including Beach, in proportion
to the amount of their several demands.  From this decree
the defendant Beach again appeals, and Gerhard and Phile
prosecute a cross appeal.                                MODIFIED.

For F. E. Beach there was a brief over the names of *Gam-
mans & Lamson* and *R. W. Wilbur,* with an oral argument
by *Mr. Geo. G. Gammans* and *Mr. Wilbur.*

For Gerhard and Phile there was a brief over the names
of *H. C. Watson* and *E. E. Wilson,* with an oral argument
by *Mr. Watson.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1.   Two questions are presented by the record:   First, whether the mechanics' liens, or any of them, should have priority over the mortgages upon the land upon which the hotel building is constructed; and, second, whether the defendant Beach should be required to prorate his demand with the other mechanics' lien claimants.   The appellant maintains the affirmative of the first and the negative of the latter proposition.   It has become settled law in this state that a mechanic's lien for materials used in the construction of a building upon land previously mortgaged will take precedence of the mortgage as to the building:   *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 402 (51 Pac. 649).   The appellant insists, however, that the mortgages in question were taken subsequent to the commencement of the hotel building, with notice thereof to the holders of the legal title, and are postponed to his mechanic's lien.   This is a question of fact to be determined from the evidence.

2.   The defendant Wilkins, the mortgagor in both mortgages, acquired his deed from Mrs. Gerhard to the north half of lot 8, block 5, October 15, 1891, and the one from Phile to the north half of lot 7, December 9 following. The mortgage was given at the time he acquired title to the property.   He testifies that Mrs. Gerhard gave him a contract to convey some ten days or two weeks before he obtained the deed; that he paid her $200 down, and informed her at the time of obtaining the contract that he intended to construct the building upon the lot; that subsequently, to wit, on October 5, he had a quantity of lumber delivered in the vicinity with the intention and purpose of constructing the same.   As it respects the Phile purchase, he states that he had been talking to him for some time previous to the acquirement of the deed about building a hotel, that Phile was aware of his intention

to build, and that they arrived at a verbal understanding about a week before the deed was made. Among other things, he says: "I told him (Phile) that I didn't want to sell that piece of property that I owned across the street, unless I could purchase the half lot of his to complete my plans for the hotel." There was evidence tending to show that neither Gerhard nor Phile posted any notices on the premises warning persons that they would not stand responsible for any expenditure of labor or materials employed or used in the structure.

Mr. Wilkins is not borne out in detail by the subsequent proofs. Mrs. Gerhard and her son both testify that there was no agreement entered into between her and him for the sale of the lot, except on the day before the deed was executed; that the $200 was paid at that time, and the deed and mortgage executed the next day; that he approached her some two weeks prior thereto regarding a purchase of the lots in the interest of some Portland party, and spoke of the likelihood of a hotel being constructed thereon, if she would sell, but that no terms were agreed upon until the day before the date of the deed. Phile says that there was some talk of constructing the hotel prior to the time he conveyed, but that he came to no agreement with Wilkins touching the lot until about the time the deed was executed. It is shown by other testimony that 6,169 feet of lumber was deposited in the alley back of the east half of lot 8, which adjoins the Phile lot then owned by Wilkins; that the lumber was delivered under an arrangement with Wilkins to furnish it for the construction of a store building on his lot; that some time prior to the thirteenth of November Wilkins changed his plans and made arrangements for the delivery of other lumber suitable for the hotel building, and on the thirteenth another consignment was delivered, perhaps in the street opposite the Wilkins lot, or it may have been opposite the Phile lot. Two other consignments were delivered prior to De-

cember 9,—one on November 20, and one on December 3.
These were unloaded in the street opposite the lot upon
which the hotel was subsequently constructed. Considered
in its entirety, the evidence proves quite conclusively that,
when the first consignment of lumber was delivered, Wilkins
had no intention of building a hotel, and that it was not de-
livered for that purpose. Just when the change in his plans
was determined upon by him is not apparent. Certainly not
before the purchase from Mrs. Gerhard, and very likely not
until shortly prior to November 13. Even at this date he
had no intention of extending the building upon the Phile
lot, as he had then entered into no arrangement for it of any
kind. Whatever ideas he may have had for making such
extension were merely speculative, and by no means settled
or determined upon. In any event, whether it pertains to
the Gerhard or Phile lot, Wilkins certainly had no intention
of building upon either until he should acquire legal title,—
that is, he did not purpose trespassing upon or invading the
property of others, and without their consent erect the build-
ing thereon,—and it is undoubtedly true that he did not
have such consent while these individuals held the title.
There was no time between the execution of the deeds and
mortgages when it could be said that he was engaged in the
construction of the building; those instruments having been
executed concurrently, so that there was no occasion at any
time which required these mortgagees to post notices to pro-
tect any interest that they may have had against incum-
brances thereon by reason of the construction of the hotel,
and hence whatever liens may have been acquired against
the building could not extend to the lots in preference to
the mortgages: *Mo. Val. Lumber Co.* v. *Reid,* 4 Kan. App.
4 (45 Pac. 722).

3. The second question must be determined by the effect
of the former appeal and the decree of this court with refer-
ence thereto. It is insisted that, as the other mechanics' lien

claimants did not appear in this court, the reversal did not affect their status, and that the decree of the lower court, whereby it was determined that the mortgage liens were superior to the mechanics' liens on the building, must yet be considered as standing intact as to them, but reversed as to the defendant Beach. The contention is based somewhat upon the decree entered in this court, which remands the cause, "with permission to the appellant (Beach) to apply for leave to amend his answer so as to present the real issues in the case for a trial on the merits so far as his interests are involved." Stress is placed upon the latter clause. The trial had been concluded, so far as it pertained to the rights of the other lien claimants, and their priorities fixed and established, while Beach was not permitted to establish his status, because it was thought he was not in a position to establish his demand, owing to the state of the pleadings. No one appeared in this court to dispute Beach's appeal except Gerhard and Phile, although all lien claimants were served with notice thereof. It will be borne in mind that the mechanics' lien claimants other than Beach were postponed by the original decree of the lower court to the lien of the mortgages, both as it respects the land and the building. By their omission to prosecute their suit here for better conditions, we are obliged to assume that they were satisfied with the decree as it then stood, and this left the controversy to proceed as between the mortgage lien claimants and Beach. The reversal, therefore, did not affect their status, but, as the decree would seem to indicate, was entered to afford Beach an opportunity to amend his pleadings and to have a trial on the merits so far as his interests were involved. When the cause was remanded there was no further appearance in the court below of the other mechanics' lien claimants, and the contest was carried on entirely between Beach and the mortgagees. In this state of the record, the mechanics' lien claimants other than Beach were precluded by

the former decree, and the trial court was powerless to enlarge the relief awarded them thereby. Beach's priority never having been determined, it was proper to decree, as the court has done, that his lien was entitled to precedence over the mortgage as to the building, but was secondary with respect to the land; but it was error to decree that the proceeds of the building should be distributed among all the mechanics' lien claimants in proportion to the amount of their several claims, as Beach alone can participate in that fund until after the satisfaction of his claim; the other mechanics' lien claimants being postponed to the mortgages on the building as well as the lots, as directed by the original decree. The decree of the court below will therefore be modified in accordance with these views.        MODIFIED.