### IN RE OSBURN'S ESTATE.

[58 Pac. 521.]

1. ADMINISTRATION—PAPERS IN TRANSCRIPT.—The filing of a final account by an executor or administrator makes the inventory on which it is based a part of the record, and it is properly included in the transcript on appeal.

2. IDEM.—In case of an appeal from an order settling an administrator's final account, the petition for letters, the order appointing the administrator, his bond, and the order of distribution, are not part of the record, and, unless offered in evidence, should not be included in the transcript.

3. ESTOPPEL BY FILING FINAL ACCOUNT.—After an administrator has filed a final account showing an administration on the estate he is estopped to deny his representative capacity or his liability to account.

4. COMPLETENESS OF FINAL REPORT.—Where the property of an estate was disposed of by auction and private sale, and the administrator shows that it was impossible to keep an account of each article sold, or of the purchaser's names, as required by Hill's Ann. Laws, § 1173, the court, if convinced that the administrator made an honest effort to sell for the best interests of all concerned, will not require an itemized and detailed report.

5. ADMINISTRATION—EXPENSE OF CONTINUING THE BUSINESS.—Under Hill's Ann. Laws, § 1144, authorizing the court to order an administrator to sell the personal property of an estate at private sale, it may order him to sell a stock

of goods in the regular course of business, and the necessary expenses of lighting, clerk hire, rent, etc., incurred for this purpose, should be allowed in the final settlement as expenses of administration.

MR. JUSTICE BEAN does not concur on this point.

6. ALLOWANCE FOR FUNERAL EXPENSES.—Where an estate is appraised at $2,400, an order approving an expense of $31 for carriages, hearse, and caring for the body of deceased is reasonable.

7. ADMINISTRATION — ATTORNEY'S FEES.—Under a statute authorizing an administrator to incur a reasonable expense for an attorney in any matter requiring legal advice, an allowance of $100 for an attorney's services in settling an estate of $2,400 consisting of a stock of goods is not unreasonable.

8. EXTRA COMPENSATION OF ADMINISTRATOR.*—Under Hill's Ann. Laws, § 1180, authorizing the court to allow an extra amount for extraordinary services, an allowance of $200 for eight months' work in closing out a stock of goods under the court's order will not be disturbed.

9. PURCHASING NEW GOODS TO HELP SALES OF OLD STOCK.—A probate court has no authority to authorize an administrator to replenish the property of the estate, even though the estate consists of a stock of goods that cannot readily be sold without renewing the supply of some articles.

10. LIABILITY FOR CONSIGNED GOODS.—Where decedent, at his death, had goods in his stock, the title to which was to remain in the vendor until paid for, and which the administrator, without knowledge of the terms, sold, the court had no authority to direct payment therefor in full; and, they not being secured, nor in the preferred class, and the estate being insolvent, the vendor must take pro rata with other creditors.

11. UNAUTHORIZED EXPENSES — COURT ORDER IS NO PROTECTION.—*Ex parte* orders of the county court, directing the administrator to pay bills that on final settlement are disallowed, can afford no protection to the administrator in his final account, under Hill's Ann. Laws, § 1173, requiring notice of the final account, and a day for the hearing of objections thereto.

12. CHARGING ADMINISTRATOR WITH APPRAISED VALUE OF ESTATE.—Where it satisfactorily appears that an administrator has really accounted for all the property of the estate, and has received substantially its appraised value, he should not be charged with more than the amount received.

From Douglas :  J. C. FULLERTON, Judge.

This is a controversy arising out of the settlement of an estate.   A. G. Osburn having died intestate, the County Court of Douglas County appointed his widow, Grace Osburn, administratrix of his estate, which consisted of a stock of boots, shoes, and furnishing goods, valued by the appraisers at $2,558.04 ; but the inventory improperly included the "shoe bill of Isaac Farris, $180.80," as an asset of the estate, so that the value of all the goods rightfully appraised was $2,377.24.   Said court having

---

*NOTE.—See *Re McCullough's Estate*, 31 Or. 86; *Re Partridge's Estate*, 31 Or. 297, and *Re Assignment of Woodall*, 33 Or. 382.—REPORTER.

ordered that the merchandise be sold at private sale, and
"as in regular course of business," the administratrix
commenced selling the goods as ordered, keeping an ac-
count of the daily receipts, but not of the articles sold,
nor the names of the purchasers, and, after conducting
the business in this manner about eight months, sold the
remaining goods at public auction, realizing for the entire
stock the sum of $2,333.15. She thereupon filed her final
account, showing that claims had been allowed against
the estate amounting to $2,631.73, upon which she had
paid, by order of the court, the sum of $759.90 ; that the
funeral charges and expenses of the administration were
$1,301.49, and that there remained on hand for disburse-
ment the sum of $271.76. Messrs. Fowle & Daley, cred-
itors of the estate, whose claim had been allowed, filed
objections to many items of the account, and, issue being
joined thereon, the court approved the account, except an
item of $40, paid to May Aubery for clerk hire, which was
disallowed. From this decision an appeal was taken to
the circuit court, and, the order complained of being
affirmed, said creditors appeal to this court.

MODIFIED.

For appellant there was a brief and an oral argument
by *Messrs. William R. Willis* and *Andrew M. Crawford.*

For respondent there was a brief and an oral argument
by *Mr. J. W. Hamilton.*

MR. JUSTICE MOORE, after stating the facts, delivered
the opinion of the court.

1. As a preliminary matter, respondent's counsel move
to strike from the transcript the petition for letters of ad-
ministration, the order appointing the administratrix, her
undertaking, the inventory, and the order of the county
court directing a pro rata distribution of the funds of the

estate; contending that neither of these papers was offered in evidence. The inventory constituted the first item of charge against the administratrix, and was the foundation of her account (Hill's Ann. Laws, § 1176; 11 Am. & Eng. Enc. Law [2 ed.], 1200; 2 Woerner, Adm'n, § 510), the filing of which made the inventory upon which it was predicated a part of the record, and it was properly included in the transcript without having been offered in evidence.

2. As to the order of distribution, the respondent is evidently mistaken, as the transcript shows it was in evidence. The other papers, however, not having been offered in evidence, and not being a necessary part of the final report, will not be considered.

3. This conclusion cannot change the result, however, for, the final account having been filed by Mrs. Osburn, showing that she had administered upon the estate, she is estopped from denying her representative character, or her liability to account accordingly: *Damouth* v. *Klock*, 29 Mich. 289.

4. When an estate is fully administered, the executor or administrator is required to file his final account, which must contain a detailed statement of the amount of money received and expended by him, from whom received, and to whom paid, and refer to the vouchers for such payments, and the amount of money and property, if any, remaining unexpended or unappropriated: Hill's Ann. Laws, § 1173. Inasmuch as it does not appear from the final account from whom the money was received, or what property, if any, remains undisposed of, or that the estate is fully administered, counsel for appellants contend that the account should be set aside, and the administratrix charged with the appraised value of the estate. No memorandum having been kept of the goods sold, or the

separate amounts received for the different articles disposed of, it is impossible to check up the sales with the inventory, so as to be able to say with any degree of certainty that any goods remain on hand, or whether they were sold for more or less than their appraised value. The administratrix, as a witness, testifies that it was impossible to keep an account of what each article sold for at the auction, and impracticable, and almost impossible, to keep an account of the names of the persons to whom the property was sold, whether at the private sale or the public auction. If it were possible to obtain a corrected report, it would be the duty of the court to set aside the account, and require the administratrix to file one conforming to the requirements of the statute; but, since a corrected report cannot be made, we have concluded that the ends of justice can better be subserved by treating the account as the final settlement of the estate, believing that the administratrix made an honest effort to dispose of the property for the best interests of all concerned.

5. It is insisted that the county court had no authority to order the merchandise sold at private sale in the regular course of business, and that the amounts paid clerks, for rent of store, electric light, and other expenses, in attempting to sell the goods in the manner indicated, should be disallowed. When it appears to the court that it would be for the interest of the estate, it may order that the executor or administrator sell all the personal property of the estate, or any article thereof, at private sale: Hill's Ann. Laws, § 1144. By this grant of power the county court is vested with discretion in the matter of ordering sales of personal property of an estate, and, while the sale was greatly prolonged by the administratrix, we do not think there has been such an abuse of her trust as to warrant us in charging her with the expenses

connected therewith, and hence the compensation of the clerks, the rent of the store, and other expenses connected therewith are allowed.

6.   Objection is made to certain items of funeral expenses, among which is the sum of $2 paid to the Eugene Register for funeral notices, $14 for carriages, and $15 for hearse and caring for the body of the deceased.   The burial of the dead is a necessity which the preservation of the health of the living enjoins, and the reasonable expenses connected therewith constitute a preferred charge upon the decedent's estate.   What is a reasonable charge in such cases must be determined by the apparent condition of the estate which is burdened therewith : 2 Woerner, Adm'n, § 359.   We think the estate left by the deceased warranted the administratrix in incurring the charges on account of the burial, and hence these items are approved.

7.   Appellants also object to the allowance of $100 as an attorney fee.   The statute provides that "an executor or administrator shall be allowed, in the settlement of his account, all necessary expenses incurred in the care, management, and settlement of the estate, including reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel :"   Hill's Ann. Laws, § 1178.   The county court, being thus authorized to make allowances on account of attorney fees, is vested with discretion in the matter, and, being cognizant of the services performed, is generally able to make a proper allowance ; and, the sum awarded being considered no abuse of such discretion, it will not be disturbed.

8.   Objection is also made to the extra compensation of the administratrix for eight months' service in the store conducting sales, amounting to the sum of $200.   The statute prescribes the compensation allowed by law to an

executor or administrator on account of the ordinary services demanded of him in the performance of his trust, but in all cases such further compensation as is just and reasonable may be allowed by the court or judge thereof for any extraordinary or unusual service not ordinarily required of an executor or administrator : Hill's Ann. Laws, § 1180. In the case at bar the administratrix made an honest effort to sell the merchandise in her possession in the ordinary course of business, and was engaged eight months in carrying out the court's order, in view of which we think the sum allowed her is not unreasonable.

9. Objection is made to the items of $15.25 and $53.67, paid to Valentine & Goldsmith and Williams, Marvin & Company, respectively, for merchandise purchased by the administratrix to enable her to dispose of the stock belonging to the estate. Osborn having died intestate, the business in which he was engaged was thereby terminated, and the court was powerless to authorize the purchase of goods to replenish the stock, and its order, being void in this respect, can afford no protection to the administratrix, who will be charged with having paid these sums on her own account.

10. Objection is also made to the claim of the Douglas County Bank, amounting to $136.05, on account of goods purchased by the decedent, which were in his store at the time of his death, the title to which was to remain in the bank until the goods were paid for. The administratrix, not knowing the terms of the delivery, sold these goods, whereupon the court ordered her to pay the bill in full. This debt was not secured, nor included in the preferred class, and the court was without authority to direct the payment of more than the pro rata share thereof : 2 Woerner, Adm'n, § 520. The administratrix was authorized by the order of the county court to pay only twenty-five per cent. of the claims allowed by her, and, having paid said bank

in full, she overpaid it $102.04, which sum will be charged to her.

11.   The *ex parte* orders of the county court directing the administratrix to pay these bills afford her no protection when brought in question and found to be unauthorized, for it is the duty of the court or judge, upon the filing of the final account, to make an order directing that notice thereof be given, and to appoint a day for the hearing of objections to such final account and the settlement thereof :  Hill's Ann. Laws, § 1173.   These statutory requirements show that all persons interested in the settlement of an estate are to have a day in court before their rights can be adjudicated.

12.   The final report does not state that the administratrix had disposed of and accounted for all the merchandise that came into her possession, but as a witness she testifies that such was the fact, and her testimony is corroborated by her final report, which shows that she received on account of sales within $44.09 of the appraised value of the goods, and, this being so, she will not be charged with the value as given by the appraisers, but with only the amount received.   The final account shows that the administratrix had in her hands for distribution the sum of $271.76, which is increased by the county court disallowing the claim of $40, and will be further augmented by the disallowed payments to Valentine & Goldsmith of $15.25, Williams, Marvin & Company, $53.67, and the Douglas County Bank, $102.04, making a total of $482.72, which latter sum will be distributed pro rata among the creditors of the estate whose claims have been allowed, paying each 18.3 per cent., including Mrs. Osburn's as the equitable assignee of the claim of the Douglas County Bank.   The decree of the circuit court must therefore be modified as hereinbefore indicated, but in all other respects affirmed.                    MODIFIED.

BEAN, J. (dissenting).

As, at present advised, I am unable to concur in the view that the county court has authority to permit an administrator to sell and dispose of a stock of merchandise belonging to the estate in the usual course of business, and therefore withhold my judgment upon that point.