Submitted on motion to dismiss appeal, November 13; motion denied
November 27, 1928; argued on the merits at Pendleton May 8,
modified July 30; rehearing denied September 17, 1929.

## In re LEE'S ESTATE.

## YOUNG ET AL. v. LEE ET AL.
(271 P. 994, 279 P. 850, 280 P. 342)

(1)

For the motion, *Nichols, Hallock & Donald* of Baker.

Contra, *O. B. Mount* and *M. D. Clifford,* both of Baker.

BEAN, J. The respondents Uthelma Lee Young and Anna Lee Stoddard move to dismiss this appeal for the reason the order and decree appealed is not final.

It appears from the record that Uthelma Lee Young and Anna Lee Stoddard as residuary legatees under the last will and testament of Miles Lee, deceased, filed in the county court for Baker county, Oregon, in the course of the administration of the estate of Miles Lee, objections to the final account filed by David Lee and W. G. Ayre, as executors of the last will and testament of Miles Lee, deceased, and thereafter took an appeal to the circuit court from an order of the county court of Baker county approving said final account and discharging said executors from their trust and exonerating their bondsmen.

The matter was heard de novo upon the transcript of testimony and the record. The circuit court sustained the objections to the final account of the executors. The court found and decreed that in the administration of the estate of Miles Lee, deceased, one Chris Lee, the son, business associate and partner of David Lee under the firm name of Lee & Son, pretended to purchase in his own name and in his individual

capacity certain sheep and certain lamb contracts belonging to the estate, which matters were referred to in the final account of the executors.

That such purchases were made, in part, by said Chris Lee for the benefit of David Lee and were null and void, and vacated the order of the county court approving the final account and discharging the executors; and remanded the cause to the county court of Baker county, Oregon, for further proceedings, not inconsistent with the findings of the circuit court.

The decree further provides:

"It further appearing to the court that said David Lee while acting as such executor and as the business partner and associate of said Chris Lee received and enjoyed certain avails, returns and profits on account of said pretended purchases of said sheep and said lamb contracts or futures with respect to which he has not accounted to said estate and that said David Lee holds said profits and returns as trustee for the estate of Miles Lee, deceased, and should be required to account to said estate therefor,

"Wherefore it is further considered, ordered, adjudged and decreed that the said David Lee proceed forthwith to fully account to and with said estates of Miles Lee, deceased, for all the transactions of said estate and the property thereunto belonging and particularly for all returns, profits and avails resulting from the resale or other disposition of said sheep and lamb contracts and futures belonging to said estate of Miles Lee, deceased, or in which said estate had an interest, and to forthwith prepare and cause to be filed with the said county court of Baker county a full, detailed and complete account of all the transactions of said estate and property thereunto belonging and particularly a full, complete and detailed account of all the transactions with reference to said sheep and lamb contracts or futures and of all of said avails, profits and returns and give due notice thereof in

accordance with law for final hearing and that said county court of Baker county proceed with the further administration of said estate in a manner not inconsistent with the opinion of the court and this order."

Section 548, Or. L., provides in part as follows:

"A judgment or decree may be reviewed as prescribed in this chapter, and not otherwise. An order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein, * * * or an order setting aside a judgment and granting a new trial, for the purpose of being reviewed, shall be deemed a judgment or decree."

Section 559, subd. (3), reads:

"Upon an appeal to the circuit court, the manner of proceeding thereafter is the same as if the action or suit had been commenced in such court; but if the appeal be from a decree of the county court, the appellate court may give a final decree in the cause or matter, to be enforced as a decree of such court, or such decree as may be proper, and direct that the cause or matter be remitted to the court below for further proceedings in accordance therewith;"

The appeal is taken from the whole of the decree of the circuit court. If the decree appealed from is not a final decree within the meaning of the statute, the motion should be allowed and the appeal dismissed; otherwise, not.

It appears from the language of the decree appealed from that the same is a final adjudication reversing a decree of the county court approving the final account of the executors of the last will and testament of Miles Lee, deceased, and adjudging that the sale of personal property belonging to the estate made to Chris Lee for and on behalf of David Lee, was fraudulent and void, and setting said sale aside.

■ This finding and decree necessitated a further accounting or sale of the sheep and lamb contracts. Therefore, the cause was referred to the county court for further proceedings for the purpose of enforcing the decree of the circuit court and carrying it into effect. The cause was not remanded to the county court for the purpose of a new trial. A trial de novo, such as was had in the circuit court in this matter, precludes the idea of a direction to the lower court to retry the issues upon which it has once passed. In re Plunkett's Est., 33 Or. 414, 417 (54 P. 152). The language used by Mr. Justice WOLVERTON in that case is applicable to the case in hand. It is as follows:

"By intendment of subdivision 3, supra, the decree of the circuit court becomes final upon the matter in hand, which it may enforce through its own process, or direct that it be remitted to the county court, with directions to take such other action in the premises as may seem proper, but always in harmony with the decree of the circuit court. It does not contemplate an affirmance or reversal for errors that may appear of record, but a final adjudication touching the matter thus brought on for hearing, which may be enforced as a decree of that court, or if remitted, controls the future proceedings of the county court."

See *Roach's Estate,* 50 Or. 179 (92 P. 118) ; *State v. O'Day,* 41 Or. 495, 499 (69 P. 542).

■ Counsel for a motion suggest that the order and decree appealed from does not affect a substantial right of the appellants. This contention can not be upheld. The decree determines, as we understand the record, the main contention of the parties to this appeal. The decree, in effect, determines the matter of the sale of the sheep and lamb contracts mentioned therein so as to prevent any further or different decree in regard thereto. The decree is to be enforced as the

decree of the circuit court, notwithstanding the fact that it is remitted to the county court to be carried out in detail. The decree appealed from is not an intermediate order. The counsel for the motion suggest that the order remanding the case to the county court for an accounting with no attempt to anticipate what such account may disclose, is not a final order from which an appeal will lie.

The decree suggests that it does anticipate the substance of the account to be rendered by the executors. In effect, the decree requires the executors to deliver or account for the sheep and contracts mentioned. It is just as final as if it required the executors to pay a certain sum of money. We in no way consider the merits of this case in connection with the motion to dismiss.

The motion to dismiss is denied.

---

ON THE MERITS

*M. D. Clifford* and *O. B. Mount,* both of Baker, for appellants.

*Blaine Hallock* of Baker (Nichols, Hallock & Donald, of Baker, on the brief) for respondents.

ROSSMAN, J. The record contains 429 pages of testimony and numerous exhibits. This mass of evidence has received careful consideration by this court, but we find no occasion for setting forth an extended review of all of it. The able judge of the circuit court who tried this case in that court, announced his conclusions in a very carefully prepared opinion which analyzes with painstaking detail this mass of evidence and clearly points out the manner in which he arrived at his conclusion that David Lee, one of the two executors, acquired an interest in that portion of the estate's property, which consisted of a half interest in the lamb contracts and full ownership of the sheep; this property was purchased in the name of Chris Lee, the son and business partner of David Lee. After a careful study of the record we find that the circuit court's extended analysis of the record satisfactorily expresses our views also, and since the issue as to whether David Lee acquired an interest in the sheep is one of fact only, the analysis by the circuit court of the evidence bearing upon this issue will suffice as an expression of our findings also. Our conclusion is that while the purchase was made in the name of Chris Lee, the real purchaser was the partnership composed of David Lee and Chris Lee, and that as a result of this transaction the former acquired a half interest in these sheep.

■ The issue as to whether David Lee was interested in the sale of the estate's half interest in the lamb contracts was one of law as well as of fact, and, therefore, requires an expression of our views. The

appellants contend that the estate's transaction in regard to these contracts merely substituted Chris Lee as owner of its previous half interest, and that since David Lee, as a partner in the firm of Lee Brothers, already owned a half interest in these contracts, the transaction nowhere trespassed upon the inhibitions of § 1276, Or. L., which provides: "All purchases of the property of the estate by an executor or administrator, however made, whether directly or indirectly, are prohibited, and if made are void." It is clear that after this transaction Lee & Son became the owner of these contracts, and that David Lee received his one-half of the profits derived from the sale of the lambs. It will be observed from the statement of facts, which precedes this decision, that the instrument which transferred these contracts named Chris Lee vendee, and that it purported to assign not only the estate's one-half interest in them, but also David Lee's. It is worthy of mention that the various documents, filed from time to time in the probate record of the estate, avoided mention of the fact that David Lee was interested in these lambs until the final chapters were being written. When the appointment of the executors was made, no administrator for the partnership property was mentioned; but the executors evidently felt that their authority extended over it, for the inventory and the appraisement make an effort at including it, and the semiannual reports refer to it. Under the laws of this state when David Lee, the surviving partner, failed to apply for the administration of the partnership property it passed into the custody and under the control of the general executors: § 1167, Or. L. One who administers upon the property of a partnership is

"* * * denominated an administrator of the partnership, and his powers and duties extend to the

settlement of the partnership business generally, and the payment or transfer of the interest of the deceased in the partnership property remaining after the payment or satisfaction of the debts and liabilities of the partnership, to the executor or general administrator within six months from the date of his appointment, or such further time, if necessary, as the court or judge may allow. In the exercise of his powers and the performance of his duties, the administrator of the partnership is subject to the same limitation and liabilities, and control and jurisdiction of the court as a general administrator. § 1168, Or. L.''

See *Burnside v. Savier,* 6 Or. 154, and *Gregory v. Keenan,* (D. C.) 256 Fed. 949. In the latter case the federal district court for this district held:

''Under the statute, the powers and duties of the administrator of the partnership estate extended to its settlement generally. § 1168, Lord's Oregon Laws. The petition for sale shows that the partnership estate was the owner of this land; and, it being the owner, the land was subject to sale for payment of the partnership debts. There exists no good reason why the administrator of such estate may not sell the real property of the estate for the payment of the. debts, although the real property stood in the name of the individual members of the partnership. It was the property of the partnership estate, nevertheless.''

Our statutes affecting partnership property after the death of one of the members, therefore, seem to contemplate that the administrator of such property sustains to it a fiduciary relationship which authorizes him under proper circumstances to dispose of it so as to wind up the business. To enable him to accomplish this end there reposes in him temporarily the title to the partnership property. Rowley, Modern Law of Partnership, § 617. Under these circumstances David Lee's interest in the partnership property, when Chris

Lee acquired an interest, was not that of a half owner, but was somewhat similar to that of a residuary legatee; that is, he was entitled to receive one-half of the remainder after the debts had been fully discharged. It follows that the transaction with Chris Lee did not consist of a substitution of him in Miles Lee's stead, but that the real import of this transaction was the purchase by Lee & Son of these lamb contracts from the administrators of the partnership property of Lee Brothers. Thus David Lee, as one of the fiduciaries, was seller, and as a partner in Lee & Son, was also a buyer. No extended analysis of § 1276, Or. L., previously quoted, is necessary to show that this sale can not be upheld as valid. The application by this court of this section of our code to sets of facts somewhat similar in the cases of *Wells v. Wood,* 125 Or. 38 (263 P. 54); *Adams v. Kennard,* 122 Or. 84 (253 P. 1048); *Gilbert v. Branchflower,* 114 Or. 508 (231 P. 982); *Acton v. Lamberson,* 102 Or. 472 (202 P. 421, 732), will readily indicate that the spirit as well as the letter of the statute has been observed. We conclude that both of these transactions were in direct conflict with § 1276, Or. L.

But the appellants argue that the word "void" in the above section of our code should be construed as "voidable," and contending that a county court has no jurisdiction to try an issue of fraud, submit that the objections of the respondents to the final report of the executors must be overruled. We are aware of the fact that purchases made by a fiduciary of the trust estate are frequently held only voidable. This court, however, recently gave effect to the precise language of § 1276, Or. L., and declared such purchases not merely voidable but void: *Adams v. Kennard,* supra. We remain satisfied with that conclusion.

■ But since the property can not be recovered it is proper to treat it as actually transferred, and require the executors to account for any profits gained by them: *Adams v. Kennard,* supra.

■ The appellants contend that the mother of the objectors, who was also a beneficiary under the will, was entirely familiar with the administration of the estate; that she approved the purchases by the executor, and that she was the representative of the two objectors. No contention is advanced that the daughters personally approved these purchases by David Lee, nor that they had any knowledge that he had acquired an interest in the estate's property. The contention of the appellants that the mother was the agent of the two daughters presents a question of fact only to which we have given careful consideration. The decision of the circuit court analyzes the evidence upon which the parties rely; in holding the appellant's contention is not supported by the evidence, we adopt the words of the circuit court as our own. The only important question which remains undetermined is what disposition should be made of this proceeding. The circuit court remanded the matter to the county court, with directions to require the executors to file a new final account which should include the profits gained by David Lee from these unlawful transactions. The objectors urge us to make a final disposition of the matter in this court. The appellants call to our attention the decisions *In re Plunkett's Estate,* 33 Or. 414 (54 P. 152), and *Roach's Estate,* 50 Or. 179 (92 P. 118), and contend that those holdings require the appellate court to try the cause de novo and that therefore it is impossible to remand the cause. Upon appeal the appellate court is vested with authority to render such decree or make

such an order as the probate court should have made. 24 C. J., Executors and Administrators, § 2524 and § 2525, p. 1051. Based upon the premises just mentioned we shall endeavor to make a final disposition of the matter in this court so far as that is possible. When the executors presented their final account to the county court, and asked for its approval, that tribunal was authorized to make such corrections in it as would cause it to set forth a true statement of the transactions handled by the executors: *Roach's Estate,* 50 Or. 179 (92 P. 118); Schouler on Wills, Executors, etc. (6th Ed.), § 3409. The appeal, as we have just stated, confers similar authority upon the appellate court.

We entirely agree with the conclusion of the circuit court withholding approval from the final account submitted, but we believe that the circumstances of this proceeding justify us in indicating the correction that the executors should make in their accounting before it may be approved. As submitted it makes no mention of these purchases by Lee & Son. It should be amended so as to include them, together with the profit derived by David Lee; the amount we shall now undertake to determine.

The precise amount of the profit gained by Lee & Son from these transactions is not clearly shown by the evidence. Manifestly the data, from which this profit could be determined, was not in the objector's possession, but was under the control of David and Chris Lee. Most of these sheep and lambs were shipped to distant markets—Chicago, Omaha and Denver; this circumstance, together with the fact that only Lee & Son knew to whom and where the shipments had been made, rendered it additionally difficult for the objectors to assemble proof of the amount of the profits.

Adding further to the difficulties is the fact that the executors offered no proof in support of their accounting; upon them rested the burden to sustain its recitals, to show that the assets had been disposed of according to law, and that they had truly accounted for the proceeds: *Roach's Estate,* supra; Schouler on Wills, Executors, etc. (6th Ed.), § 3408, and 24 C. J., Executors and Administrators, § 2470, p. 1017. David Lee did not testify; Chris Lee was called to the stand by the objectors in an endeavor to account for the property and the profits from the resales, but was a most unsatisfactory witness. Apparently his memory was poor and he, together with the attorney for the estate, insisted that no documentary evidence was available as to the sales of the livestock. It is true that upon request he produced a few canceled checks, but he lessened their probative value by testifying that his firm's volume of business was so large that it was not always possible to determine in what transaction any particular check had its inception. He reiterated many times his insistence that no documentary proof was available in spite of the fact that the proof showed that in the course of transactions of this character, bills of lading, drafts, statements of account, weight tickets, correspondence, etc., were transmitted to Lee & Son. This evidence, if produced, would have shown the weight, price obtained, and other data in regard to the shipments useful in determining profits. Chris Lee testified that all of these papers had evidently been destroyed; he added that Lee & Son kept no account books of any kind, although their transactions in sheep, lambs and wool were extensive and required the employment of men, land and borrowed capital. At one time during the course of his examination he seemed willing to produce his income tax returns for the year 1925, but

later concluded not to do so. He acquiesced in the statement that the profits gained from the resale of the sheep were $2,500 and about $6,000 from the lamb transactions. He described these as gross profit, but offered no precise method of determining the net amount apart from the suggestion that the interest charges and the cost of the care of the livestock should be deducted from the gross profits. Other evidence from disinterested sources indicates that the gross profits upon the sheep were materially larger. There is other proof available for the purpose of determining the net profits gained from the resale of the lambs. The commission merchants remitted upon the basis of a definite amount per pound. Chris Lee admitted that in some instances the net profit was more than one cent per pound, although he contended that in other instances the profit was less; the total weight of all lambs delivered to Lee & Son under the assigned contracts was approximately one million pounds. After a careful consideration of all of the evidence, we believe a finding is warranted that a net profit of one cent per pound was gained by Lee & Son from the sales of the lambs. Our conclusion is that the firm made a net profit of $10,000 on the lamb sales, and $2,500 in its transaction in the sheep; the final account should credit the estate with a charge against David Lee for one-half of that sum, $6,250. The order to be entered in the county court will withhold approval from the final accounting until it includes the aforementioned items.

 There remains for determination only the matter of the fees. While the attorney for the estate rendered faithful services in various matters disposed of by him, their value was lessened, due to his attitude toward the improper purchases made by David

Lee. Without reservation he testified that he did not inform David Lee that his purchases were unlawful; in fact, his testimony warrants the conclusion that he regarded these transactions as proper. It. is evident that the attorney could have readily prevented these purchases by the executor, and thereby the delay and expense caused by this proceeding would have been avoided. Possibly the estate's need for money, and his opinion that the executor was paying a fair price, persuaded him that these sales were advantageous to the estate; but those circumstances are insufficient to uphold the executor's purchases from himself. The law is an enforceable code of ethics governing the conduct of men, and § 1276, Or. L., inhibits such purchases even though the executor is able to show that he paid a fair price. The reasons why such purchases can not be upheld, even though the price paid was fair, have been often stated and need not now be retold. Moreover, he had promised to ask for no more remumneration than David Lee would allow, and the two had agreed that $1,000 was sufficient; this amount was set forth in two of the semiannual reports prepared and signed by the attorney, and was allowed in the order of the county court. Under the circumstances this amount, while small, will have to suffice. We are of the opinion that Messrs. Nichols, Hallock & Donald, who have conducted this proceeding in the preservation of the estate should be allowed a fee of $900. It is contended that the executors are entitled to no remuneration due to the purchases by Lee & Son. We are of the opinion, however, that the executors performed valuable services in bringing an estate out of a bad status of financial embarrassment to the place where it is now free from debt and possessed of much valuable property. These unfortunate purchases adversely

affected the value of the executors' services, but were due largely to zeal and ignorance. To the executors we allow a fee of $1,500.

Our conclusions, therefore, are that the county court should not approve the final account presented until it has been amended so as to include a charge of $6,250 against David Lee. The cause will be sent back to the circuit court to be remitted to the county court of Baker county, with directions to enter a decree as hereinbefore indicated. The decree may allow the objectors their costs and disbursements. Modified.

BEAN, McBRIDE and RAND, JJ., concur.

Rehearing denied September 17, 1929.

ON PETITION FOR REHEARING

(280 P. 342)

ROSSMAN, J. In denying the petition for a rehearing we avail ourselves of this opportunity to correct an error of calculation which is present in our former decision. It is there stated that the final account should credit the estate with a charge of $6,250 against David Lee; this charge should be $7,500. The difference is due to the fact that of the two items from which the charge is determined David Lee was entitled to a half interest in only one of them. The two items are $10,000, which represented the net profits derived from the lamb contracts, and $2,500 net profits gained from the sale of sheep. The estate was entitled to only a half interest in the former, but was the sole owner of the sheep from which the profit of $2,500 was derived. Hence it follows that the total charge against David Lee should be $7,500, together with interest at the rate of 6 per cent per annum upon these two items from the time he came into possession of them. The

former decision possibly is sufficiently clear, but the above is added to avoid any misunderstanding. We intended that the costs should be assessed against David Lee individually under the authority conferred by § 575, Or. L. See also 7 R. C. L., Costs, § 12.

PETITION FOR REHEARING DENIED.