Argued December 14, 1933; modified January 30; rehearing denied
March 6, 1934

IN RE MANNIX ESTATE

HARJU *v.* COX ET AL.

(29 P. (2d) 364)

*Arthur I. Moulton,* of Portland (Lord, Moulton & Krause, of Portland, on the brief), for appellant.

*A. A. Anderson,* of Astoria, for respondent Mary E. Cox.

*Loyal M. Graham,* of Forest Grove, for respondent Detroit Fidelity & Surety Co.

ROSSMAN, J.   The issues awaiting our disposition will be better understood after a statement has

been made of the facts out of which this controversy arose. The following, we believe, fairly states the facts: March 1, 1922, N. E. Harju obtained a judgment for $6,000 against E. W. Anderson in the circuit court for Clatsop county, which was affirmed on appeal by this court in 1924 in *Harju v. Anderson*, 111 Or. 414 (225 P. 1100). See, also, *Anderson v. Harju*, 113 Or. 552 (233 P. 848). Joseph Mannix, a member of the bar and co-partner of E. E. Mathison in the practice of law, during the course of the trial in the circuit court, assisted Mathison who had previously entered into a contract with Harju for compensation for the services to be performed in the cause. March 15, 1922, Mannix filed in the office of the county clerk of Clatsop county a notice of lien upon the judgment, claiming that Harju was indebted to him in the sum of $1,000 for services performed during the course of the proceedings. June 2, 1923, Mannix died intestate, and thereafter his widow, Mary E. Mannix, now Mary E. Cox, was appointed administratrix of his estate. March 12, 1925, she, as administratrix, instituted suit in the circuit court of Clatsop county against Harju and J. C. Clinton, county clerk, to whom the Harju-Anderson judgment had been paid by virtue of a writ of execution, and who still retained its proceeds, to establish and foreclose the alleged attorney lien. Clinton answered by interpleader, depositing in the registry of the court $1,180 of the judgment money. Issue was joined by Harju and the cause was tried December 18, 1925, resulting in a decree entered April 12, 1926, establishing an indebtedness of $1,000 in favor of the administratrix against Harju, and foreclosing an attorney lien to that extent upon the judgment money. The following events occurred on April 26, 1926: (1) Harju filed in the lien suit a motion to vacate the decree; (2)

the administratrix filed her second semi-annual account in which she reported that she had prosecuted in the circuit court the suit just mentioned resulting in the entry of a decree in her favor in the sum of $1,000; (3) the county judge approved the report just mentioned; (4) the county judge ordered her to file a surety bond in the sum of $1,000 to assure the faithful performance of her trust; (5) the required bond was filed, executed by the respondent Detroit Fidelity & Surety Company, as surety; and (6) the county clerk paid to the administratrix $1,000, as directed in the circuit court's decree. In her second semi-annual report which we mentioned a moment ago as having been filed and approved on April 26, 1926, the administratrix stated that before she instituted the lien suit she had agreed with the attorney who prosecuted it that she would compensate him with "fifty per cent of whatever amount could be collected and realized therefrom; that in the performance and execution of said contract, your administratrix has been obliged to pay and has paid to the said attorney fifty per cent of said sum of $1,000.00, or the full sum of $500.00; and that there are now remaining in the hands of your administratrix as the funds of said estate the sum of $500''. The report made no mention of the fact that a motion to vacate the decree was pending. The report listed the following accounts against the estate as having received the administratrix's approval:

| | |
|---|---:|
| Hospital service | $ 69.78 |
| Medical care | 150.00 |
| Funeral charges | 290.25 |
| Funeral charges | 138.53 |
| Promissory note | 1,000.00 |
| Total | $1,648.56 |

The report having been approved, the administratrix paid, between April 26 and May 1, 1926, as is disclosed by her third semiannual report, the aforementioned account of $290.25, and made payments of 50 per cent upon the hospital and medical accounts. Shortly thereafter she paid several other debts incurred by herself consisting of premiums upon her bond and expenses attendant upon the appeal of the lien suit to the Supreme Court, whereby the assets in her possession were reduced to $17.75 cash.

As previously stated, Harju filed in the lien suit on April 26, 1926, a motion to vacate the decree. June 11, 1926, this motion was allowed by an order which vacated the decree and granted a new trial. The administratrix's appeal from this order was dismissed by this court on April 17, 1928. (See *Mannix v. Harju,* 125 Or. 258 (266 P. 238)). April 26, 1928, the county court entered an order which recited that the bond in the sum of $1,000 executed April 26, 1926, was "discontinued", and that "from and after this date said surety be and it is hereby completely exonerated and released and discharged from any and all further liability and responsibility under or on account of same". Thereafter the circuit court again considered the lien suit, and on January 5, 1929, entered a decree dismissing it, from which we quote the following:

"Finds that under the law and the facts herein the plaintiff is not entitled to recover under the said attorney's lien upon which her complaint is based; it further finds that the decree heretofore entered herein should be set aside, Now, Therefore, it is hereby considered ordered and decreed that the former decree herein entered on the 12th day of April, 1926, be and the same is hereby set aside and held for naught; it is further ordered and decreed that the plaintiff recover nothing by her suit herein; it is further ordered and

decreed that the said defendant N. E. Harju is and he hereby is decreed to be the legal owner and entitled to the said money, namely, the sum of $1,180.00 deposited in this court in this cause; it is further ordered and decreed that said J. C. Clinton, clerk of this court, pay over the said sum of $1,180.00 to said N. E. Harju, defendant herein.''

No appeal was taken from that decree. Thereafter Harju demanded from the administratrix, without avail, the return of the $1,000. Still later Harju filed a petition in the county court in the probate proceedings seeking vacation of the order of exoneration of the surety, and, upon citation, appearance and hearing, an order was made vacating the order relieving said surety from liability. No appeal was taken from that order. Next, Harju filed in the county court, in the probate proceedings, a petition setting up the history of the litigation whereby the administratrix obtained the $1,000, and prayed for an order directing the administratrix and her surety to deliver said sum to him. No order seems to have been made by the court upon this petition. Upon order of the county court the administratrix filed her final account wherein all receipts of money and the disposition thereof are exhibited, and to this final account Harju filed the objections with which we are now concerned. Upon hearing, an order was entered approving the final account and exonerating the sureties, from which order Harju appealed to the circuit court. The circuit court, as previously noted, affirmed the county court's order. The above, we believe, fairly states the facts disclosed by the record. An occasional detail, as it becomes pertinent, will be added later.

■■■ The respondents, the administratrix and the aforementioned Detroit Fidelity & Surety Company,

contend that the circuit court erred when it overruled a motion filed in that court by the surety to dismiss Harju's appeal from the order of the county court approving the administratrix's final account. In support of this motion, they point out that the notice of appeal was not served upon the surety, and argue that, therefore, the circuit court did not obtain jurisdiction over the cause. After the motion had been overruled, the surety participated in the trial of the cause in the circuit court to the same extent as though proper service had been made. In the circuit court Harju sought no relief from the surety company directly. Originally he sought and obtained relief directly against it in the county court by moving in that court for vacation of that court's order whereby it had exonerated the surety from liability, but after the county court had sustained that motion, as it was bound to do (*Bellinger v. Thompson,* 26 Or. 320 (37 P. 714, 40 P. 229) ; 24 C. J., Executors and Administrators, p. 1068, § 2563, and p. 1073, § 2573), no appeal was taken from its order. After the entry of that order the rights of the surety could not be affected by anything done in this proceeding, unless the administratrix failed to discharge her duty in regard to the $1,000 fund as construed in this proceeding. Her liability is, therefore, the primary one, and the surety company is not an adverse party within the contemplation of § 7-503, Oregon Code 1930, as interpreted in *Spitzer v. Annette Rolph,* 110 Or. 461 (218 P. 748, 223 P. 253) ; *Williams v. Pacific Surety Company,* 70 Or. 203 (139 P. 934) ; *Barger v. Taylor,* 30 Or. 228 (42 P. 615, 47 P. 618), and *The Victorian,* 24 Or. 121 (32 P. 1040, 41 Am. St. Rep. 838). However, the surety company is before us as a respondent, and, since the question will ultimately occur when costs are imposed whether or not it is properly before us, we shall de-

termine the question now. Section 7-510, Oregon Code 1930, provides:

"Upon an appeal from the judgment of a county court or justices court, the action shall be tried anew, upon substantially the issues tried in the court below."

Section 7-513, subd. 3, provides:

"Upon an appeal to the circuit court, the manner of proceeding thereafter is the same as if the action or suit had been commenced in such court."

By virtue of these sections of our code, the trial in the circuit court becomes one de novo: *Goin v. Chute,* 126 Or. 466 (260 P. 998, 270 P. 492), and *Roach's Estate,* 50 Or. 179 (92 P. 118). However, in order to proceed with a trial de novo it is essential the circuit court should have jurisdiction of the subject-matter as well as of the parties. It is our opinion that when the administratrix was properly served with the notice of appeal jurisdiction over the subject-matter was conferred upon the circuit court. The surety company's subsequent participation in the trial in the circuit court, after denial of its motion to dismiss the appeal, we believe, conferred upon the circuit court jurisdiction over it: 3 C. J., Appeal and Error, p. 1249, § 1363. We have not overlooked *Rodman v. Manning,* 50 Or. 506 (93 P. 366), cited by the respondents. However, that cause did not have its inception in the county court. Since the surety participated in the trial in the circuit court after Harju had properly pursued the course essential to confer upon that court jurisdiction over the cause, we are bound to conclude that the surety company waived the irregularity of service.

Before considering the contention advanced by Harju that the administratrix's final account was not subject to approval until it directed her to deliver to

him the $1,000 fund, we shall consider the merits of two preliminary contentions advanced by the respondents. In the first of these they contend that the county court lacked jurisdiction to determine whether a debt existed in favor of Harju. They buttress this contention with the statement: "Harju had no right to be heard in the probate court. If he has any claim against Mary E. Cox, it is a personal matter between them." The $1,000 of Harju's money which came into possession of the administratrix was received by her in her fiduciary capacity and was expended by her in discharging claims against the estate pursuant to orders of the probate court. The moment the estate received Harju's money it became indebted to him in the sum of $1,000. It will be recalled that the circuit court, by its decree of January 5, 1929, "ordered and decreed that the said defendant N. E. Harju is and hereby is decreed to be the legal owner and entitled to the said money, namely, the sum of $1,180.00" and ordered its return to him. Thus, between the estate and Harju there existed since April 26, 1926, the relationship of debtor and creditor. As we shall see later, the estate from the very beginning was insolvent, and, hence, the only beneficiaries of the administratrix's trust were the creditors of whom Harju was one. A creditor has a right to insist that the executor or administrator maintain and file accurate accounts: §§ 11-702 and 11-705, Oregon Code 1930. These accounts should reveal not only the assets but also the liabilities of the estate: § 11-701, Oregon Code 1930. He also has a right to insist that the assets be applied to the satisfaction of the claims: 24 C. J., Executors and Administrators, p. 928, § 2305. The county court is "empowered to compel a final settlement of the estate" by the executor or administrator: *Roach's Estate,* 50 Or. 179 (92 P. 118).

As a part of its authority to effect a final settlement, the county court is authorized to surcharge the administrator or executor with any loss which the estate has suffered through his failure to exercise the degree of care and discretion which an intelligent person of ordinary prudence and judgment observes in the management of his own affairs: *Roach's Estate,* supra. In the second of these contentions, the respondents argue that the county court lacked jurisdiction to direct the administratrix to pay to Harju the aforementioned sum of $1,000. In presenting this contention they proceed upon the theory that a controversy existed between the administratrix and Harju concerning the $1,000 fund and cite in support of their contention concerning lack of jurisdiction: *Hillman v. Young,* 64 Or. 73 (127 P. 793, 129 P. 124) ; *Manser's Estate (Manser v. Baker),* 60 Or. 240 (118 P. 1024) ; *Harrington v. Jones,* 53 Or. 237 (99 P. 935); *Re Bolander's Estate,* 38 Or. 490 (63 P. 689) ; *Dray v. Bloch,* 29 Or. 347 (45 P. 772); *Gardner v. Gillihan,* 20 Or. 598 (27 P. 220). In all of these cases a bona fide dispute existed between the representative of the estate and a third party concerning ownership of property which the estate claimed. The circuit court in none of these cases had settled the dispute by judgment or decree. In the instant case, the controversy between the administratrix and the claimant was settled in a suit instituted by her in a decree of the circuit court entered before the final report was filed. This distinction is sufficient, in our opinion, to dispose of the above authorities. After the entry of the circuit court's decree it became the duty of the county court, not to ignore nor to thwart the decree but to carry it into effect so far as the writs, orders and other instrumentalities under its command permitted. The decree, by virtue of § 9-618, Oregon Code

1930, was conclusive in the county court as to the title of the fund. The moneys, credits and other properties which comprise a deceased's estate are under the control of the probate court and a creditor of the estate who, like Harju, has secured a decree or judgment cannot levy a writ of execution upon the estate's property (*Harrington v. La Rocque,* 13 Or. 344 (10 P. 498) but must present his claim to the estate's representative. Section 28-1003, Oregon Code 1930, in our opinion, confers ample authority upon the county court to have authorized it to carry into effect the circuit court's decree in Harju's favor. It provides:

"The county court has the exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is, * * * 3. To direct and control the conduct and settle the accounts of executors, administrators, and guardians; 4. To direct the payment of debts and legacies, and the distribution of the estates of intestates; 5. To order the sale and disposal of the real and personal property of deceased persons; * * *"

In determining the merits of the chief contention advanced by Harju, and mentioned a moment ago, that the administratrix's final account should direct her to pay to him the sum of $1,000, it is convenient to also consider the contention urged by the respondents that "the administratrix committed no wrong in the administration of the estate".

In determining whether the administratrix committed a wrong, we shall revert to the financial condition of the estate at the time of Mr. Mannix's death. As disclosed by the inventory and appraisement, the estate consisted of one month's salary earned by Mannix as city attorney of Astoria, amounting to $175, and also of a desk, chair and typewriter appraised at a value of $55. Apparently there was also somewhere an additional sum of $7. The county court at once set

aside to the widow, as exempt from execution, the desk, chair, typewriter and $75 of the salary money. In addition it ordered paid to her for the support of herself and her child $107. Thus, all of the assets listed in the inventory and appraisement were consumed. We have already mentioned the fact that the administratrix's second semi-annual report which received the approval of the county court listed debts of the estate amounting to $1,648.56. Later, the administratrix incurred approximately $100 additional debts, and, by virtue of the circuit court's decree, the estate became required to return to Harju the $1,000 fund. In addition to the above, the administratrix, on April 26, 1926, paid to the attorney who had conducted the lien suit $500, apparently in the belief that the estate owed him that amount for prosecuting the suit. Thus, possessing no assets whatever available for the payment of creditors, the administratrix was confronted with claims aggregating more than $3,200. The insolvency of the estate was recognized by the administratrix herself at the time (April 26, 1926) she received the $1,000 Harju money by reporting to the county court her inability to discharge all of the estate's debts even with the assistance of that fund. Between April 26 and May 1, 1926, the administratrix disbursed $899.87 of the Harju money, leaving in her possession a balance of only $100.03, and made further disbursements which reduced the assets in her possession to $17.75 cash. These disbursements were made at time when the motion to vacate the lien suit decree was pending and before the time for prosecuting an appeal had expired. Thus, when the circuit court's decree was entered directing the return of the $1,000 fund to Harju the estate possessed nothing with which it could make reimbursement. Let us, therefore, determine the course which the county

court should have pursued to carry into effect, if possible, the circuit court's decree.

As stated and applied in *Roach's Estate,* 50 Or. 179 (92 P. 118), an executor or administrator is "required to exercise that degree of care and discretion which an intelligent person of ordinary prudence and judgment would observe in the management of his own affairs". In the following two instances the administrators of insolvent estates disbursed the entire assets in their possession pending appeals of contested claims, and, being unable to pay the claims when their validity was sustained by the appellate court, were held personally liable to the estate for a suffifcient sum to satisfy the creditors. In *Schulhoefer v. Fulton,* 203 Ala. 196 (82 So. 446), one Fulton had presented to the administrator of an insolvent estate a claim which, upon contest, was held invalid. Fulton appealed and the administrator in his report certified to the probate court that the claim had been expunged, which thereupon ordered a dividend of 25 per cent to be paid upon all of the remaining claims. The payment was made, thereby exhausting the assets. Subsequently the appellate court sustained the validity of Fulton's claim, but, since the assets of the estate had been exhausted by the 25 per cent disbursement, the administrator possessed nothing with which to pay Fulton. We now quote from the decision:

"In the instant case the administrator had full knowledge of the appellee's claim which had been reduced to judgment, and which had been the subject of much litigation. He reports it as a 'claim expunged by order of court,' and yet had full knowledge and notice that from such decree the appellee had prosecuted an appeal for review, and that said appeal was pending at the time of the order of distribution, and when the funds were actually distributed among the other credi-

tors; appellee's claim being totally ignored, and no steps being taken by the administrator to protect himself against the contingency of a successful termination of appellee's appeal.''

The decision affirmed the decree entered in the probate proceedings directing the administrator to make payment to Fulton in the same amount as he would have received had payment been made to him at the time of the regular distribution. Thus, the administrator was held personally liable on account of his misapplication of the estate's funds. It will be observed that the personal liability was sustained although the 25 per cent disbursement, which exhausted the assets, was made pursuant to an order of the probate court. From *Clark v. Guard,* 73 Ala. 456, we quote:

''When, on final or partial settlement of an insolvent estate, litigation is still pending, and remains undecided, over a contested claim against the estate, distribution or disbursement should not be made of the entire assets, until the contention over such claim is finally settled. If the claim is disallowed in the court below, and an appeal is claimed, then the administrator should, on motion, be allowed to retain and reserve 'in his own hands a ratable proportion of such moneys for such (claim or) claims as may be then contested and undecided.' A decree of disbursement should never be so made, as to compel the administrator to pay out money which he is liable, under pending litigation, to pay again, and to another. When such questions arise, the settlement is not properly a final one. It should be so far made partial, that there will be left in the hands of the administrator a sufficient fund to meet the liability, rendered contingent by the continuing litigation. Yet, in such case, the probate court is not put in fault, unless the administrator move therefor. It is contended for the administrator that Guard should not have had a decree against him, but should have been left to his suits against other creditors, who

have been paid more than their several shares as shown by the redistribution. Section 2585 of the Code is relied on in support of this position. We do not so understand that section. *  *  *"

We have not overlooked § 2578 of Code of Alabama, 1876, which provided:

"At such settlement the court must decree to each creditor, whose claim has been allowed as herein provided, his proportion of all moneys then found due from such executor or administrator, reserving in his hands a ratable proportion of such moneys for such claims as may be then contested and undivided; and a similar settlement and distribution must be made at least every six months thereafter, at such times as the court may appoint, until the estate is finally settled and distributed."

However, we believe that this statute is nothing more than an enactment of the rule commonly employed, and that it is in harmony with the practice of this state. In *Estate of H. Gibson & Son,* 124 Or. 193 (264 P. 371), we held that the final account of an administrator of an insolvent estate was not entitled to approval where he had made payments upon unverified claims thereby reducing the amount which was available for pro rata distribution among those whose accounts had received approval. We required him to debit himself with the amount of the unauthorized payments. In *Roach's Estate,* supra, where it appeared that the executor had loaned some of the estate's money without security, other money upon inadequate security, other money upon second mortgage security, and that he had also permitted the bar of the limitation period to accrue upon a claim, the application of the above principle resulted in charging him personally with the amount of the losses suffered by the estate.

In the instances aforementioned the moneys which the representative disbursed belonged to the estate and the wrong which he committed consisted of making ill-advised payments, to the injury of the estate. In the present instance, the entire fund which the administratrix disbursed belonged to a third party and not to the estate. In applying the principle recognized in the aforementioned decisions that the representative must exercise due care for the security of the money or other properties in her possession, so that she may deliver them to those who are justly entitled to receive them, we observe that the administratrix, when she sought an order authorizing her to disburse the $1,000 fund, did not acquaint the county court with the fact that a motion was pending in the circuit court to vacate the decree mentioned in her application. The county court's ex parte order directing the disbursement of this fund clearly cannot protect the administratrix against the claim of Harju: *In Re Osburn's Estate;* 36 Or. 8 (58 P. 521), and *Schulhoefer v. Fulton,* supra. When the hasty disbursement was made, including the payment of one-half of the fund to an attorney whose right to payment had not then (and has never) accrued, the decree of the circuit court was only 14 days old, a motion to vacate it was pending, the time for an appeal had not passed, and, since the term of court within which the decree was entered had not expired, the court had not lost the power inherent in it (*Obermeier v. Mortgage Co. Holland-America,* 111 Or. 14, (224 P. 1089)), to make any changes in the decree, upon its own motion, which justice demanded. When she contemplated making these hasty disbursements she was charged with knowledge that if a reversal of the decree should be made she might be required to return the fund. Such being true, it was her duty, as a bailee,

to keep the fund in such safe manner that she would be able to make any disposition of it which duty required. Being of this opinion it follows that her account should charge her with a liability in favor of Harju in the amount of $1,000. Until such an entry has been made in her account, and until payment has been made, either by her or by one of her sureties, the court should not discharge her as the administratrix of the estate. The circuit court, under the statutes above mentioned, has ample authority to enter the appropriate decree: *Young et al. v. Lee et al.,* 132 Or. 1 (271 P. 994, 279 P. 850, 280 P. 342). The cause will be remanded to that court, with instructions to enter such decree.

BELT and KELLY, JJ., concur.

---

RAND, C. J. (dissenting). This is an appeal from a decree of the circuit court affirming the decree of the county court which allowed the final account of the administratrix, overruled the objections of N. E. Harju thereto and settled the estate of Joseph Mannix, deceased.

The sole question in controversy in the county court was whether the title and right to the possession of $1,000 in money, which, under a decree of the circuit court, had been adjudged to be the property of the estate and, pursuant thereto, had been paid over to the administratrix and had been applied by her in settlement of claims against the estate, was in the administratrix or in Harju. This controversy grew out of the fact that, subsequent to the entry of the decree awarding the money to the administratrix, that decree was set aside and vacated and another decree was entered holding the money to be the property of Harju. But before the last decree was entered in that

suit, substantially all said money had been paid out by the administratrix and, at the time of its entry, she had no moneys or property in her possession from which the moneys could be repaid to Harju.

It will thus be seen that, at the time the estate was settled, the sole question in controversy was a dispute between the administratrix and Harju, who was a third party and not a general creditor of the estate, as to the title and right to the possession of moneys which, as finally adjudicated in the suit, had never belonged to the estate and had wrongfully come into her hands as administratrix.

It is clear from the former decisions of this court that the county court, in exercising the jurisdiction pertaining to a court of probate, has no jurisdiction to determine the title or right to the possession of money or other property as between the administratrix and a third party, and that, since the objections presented a controversy of that kind, the county court, in over-ruling the objections and in allowing the final account, properly disposed of the matter and that, upon an appeal therefrom to the circuit court, that court was bound to affirm the judgment since its jurisdiction upon the appeal was necessarily limited to the determination of those matters upon which the county court had been called upon to pass and had jurisdiction to determine.

In every case which this court has decided heretofore, where a dispute in settling an estate has arisen between the administrator and a third person over the title and right to the possession of money or property, it has always been held that the county court was without jurisdiction to determine those questions between an administrator and the third person, and that, if an

adjudication of that nature was necessary, it must be had in a court of ordinary jurisdiction. It is so held in *Gardner v. Gillihan,* 20 Or. 598 (27 P. 220); *Dray v. Bloch,* 29 Or. 347 (45 P. 772); *Re Bolander's Estate,* 38 Or. 490 (63 P. 689); *Harrington v. Jones,* 53 Or. 237 (99 P. 935); *Manser v. Baker,* 60 Or. 240 (118 P. 1024); *Hillman v. Young,* 64 Or. 73 (127 P. 793, 129 P. 124). The same principle was recognized and approved, although held to be inapplicable, in *Banfield v. Schulderman,* 137 Or. 256 (299 P. 323, 3 P. (2d) 116).

True, it appears from the record in this case that in the suit referred to it was held that the moneys in controversy were the property of Harju, but Harju had never recovered possession of the moneys and was seeking to do so in the county court by the filing of objections to the final account of the administratrix several years after she had received the money and it had been applied in the payment of claims against the estate. That the county court was without jurisdiction to grant such relief is clear from the authorities cited above. In order for Harju to obtain such relief, it was necessary for him to seek his remedy, as said in *Re Bolander's Estate,* supra: "in a court organized and constituted for the purpose of trying questions of that character, and provided with the necessary machinery therefor", and where the aid of a jury could be had. As said by the Supreme Court of California in *Re Rowland's Estate,* 74 Cal. 523 (16 P. 315, 5 Am. St. Rep. 464):

"The law does not contemplate or provide for the distribution of property or money in the hands of the executor or administrator to persons who may claim adversely to the estate, but leaves all such questions to be determined by action on behalf of or against the executor."

It appears from the record that the administratrix has faithfully accounted for all moneys received by her in so far as the assets of the estate are concerned and since the county court in settling this estate had no jurisdiction to adjudicate the controversy between Harju and the administratrix it had no other alternative except to allow the final account and refuse to pass upon the objections which had been filed thereto, and, since it rendered a proper decision in the case, upon an appeal from its decree, the circuit court was bound to affirm the decree. The powers and jurisdiction of the circuit court were limited to the matters passed upon by the county court and it could not, because of some collateral matters or because of any greater jurisdiction possessed by it, reverse the decree. It is idle to contend, if the decree of the county court was right when entered, that upon a trial de novo and upon the same record and the evidence accompanying it, a superior court could reverse it. To this effect see *In re Plunkett's Estate,* 33 Or. 414 (54 P. 152); *Roach's Estate,* 50 Or. 179 (92 P. 118); *In Re Barker,* 83 Or. 702 (164 P. 382); *In re Lee's Estate,* 132 Or. 1 (271 P. 994, 279 P. 850, 280 P. 342).

For these reasons I dissent.